UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Laurie Morrow,

       Plaintiff,

       v.                                                              Civil Action No. 2:16-cv-107

Nancy A. Berryhill, Acting Commissioner
of Social Security Administration,

       Defendant.

## OPINION AND ORDER
(Docs. 7, 8)

     Plaintiff Laurie Morrow brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security denying her application for disability insurance benefits (DIB).

Pending before the Court are Morrow's motion to reverse the Commissioner's decision

(Doc. 7) and the Commissioner's motion to affirm the same (Doc. 8).  For the reasons

stated below, Morrow's motion is GRANTED, the Commissioner's motion is DENIED,

and the matter is REMANDED for further proceedings and a new decision.

## Background

     Morrow was 58 years old on her alleged disability onset date of November 1,

2011.  She attended college at the University of Vermont and thereafter obtained an M.A.

and a Ph.D. in English from the University of Kansas.  (AR 30–31.)  She was an English

Professor at Louisiana State University from approximately 1981 until 2000.  (AR 31,

165.)  Soon thereafter, she and her husband moved to Vermont, seeking better medical care for their autistic son.  (AR 31.)  Since 2001, Morrow has held various jobs, including as a radio talk show creator and host, a public relations representative, a grant writer, a fundraiser, and an adjunct professor at St. Michael's College.  (AR 31–33, 41, 165.)  She has also done volunteer work with several groups, including the Heritage Foundation, Washington County Mental Health Services, and the Vermont Autism Task Force.

In March 2013, Morrow filed her DIB application, alleging that she has been unable to work since November 1, 2011, due to anxiety with panic attacks, attention deficit disorder (ADD), depression, insomnia, a thyroid condition, transient ischemic attack, high blood pressure, and spinal arthritis.  (AR 147–48.)  Morrow testified at the administrative hearing that she is unable to work mostly because of her ADD, depression, anxiety, memory problems, back pain, and shoulder pain.  (AR 34, 36–39.)  She stated that she wants to work and she makes an effort to keep her mind active, but she cannot work fast enough; she is unable to meet deadlines; and she does not finish what she starts. (AR 34–36.)  Morrow further stated that, in a typical day, she sleeps for 12 to 14 hours, attempts to do job search work, tries to write "something," sometimes makes dinner, and does volunteer work.  (AR 35–36.)

Morrow's disability application was denied initially and upon reconsideration, and she timely requested an administrative hearing.  On September 17, 2014, Administrative Law Judge (ALJ) Thomas Merrill conducted a hearing on the application.  (AR 27–43.) Morrow appeared and testified, and was represented by counsel.  A vocational expert (VE) also testified at the hearing.  A few months later, on December 8, the ALJ issued a

decision finding that Morrow was not disabled under the Social Security Act from her alleged disability onset date through the date of the decision.  (AR 13–22.)  Thereafter, the Appeals Council denied Morrow's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–4.)  Having exhausted her administrative remedies, Morrow filed the Complaint in this action on April 18, 2016.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the

claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R.

§§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the

claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant

bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at

383; and at step five, there is a "limited burden shift to the Commissioner" to "show that

there is work in the national economy that the claimant can do," *Poupore v. Astrue*,

566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at

step five is limited, and the Commissioner "need not provide additional evidence of the

claimant's [RFC]").

Employing this sequential analysis, ALJ Merrill first determined that, although

Morrow had engaged in "work-like activity" during the alleged disability period, she had

not engaged in "substantial gainful activity."  (AR 15.)  At step two, the ALJ found that

Morrow had the following medically determinable impairments: "an ankle impairment; a

back impairment; obstructive sleep apnea; transient ischemic attack; depression; anxiety;

and attention deficit hyperactive disorder."  (*Id.*)  Nevertheless, the ALJ determined that

none of these impairments (alone or in combination) was severe, meaning they had not

"significantly limited . . . [Morrow's] ability to perform basic work-related activities for

12 consecutive months" during the alleged disability period.  (AR 16.)  Without

proceeding to the remaining steps of the five-step sequential evaluation, the ALJ

concluded that Morrow had not been under a disability from her alleged disability onset

date of November 1, 2011 through the date of the decision.  (AR 22.)

4

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the

Social Security Act is "a remedial statute to be broadly construed and liberally applied."

*Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Morrow claims the ALJ erred at step two of the sequential evaluation in finding

that she does not have a severe impairment or combination of impairments.  Specifically,

Morrow asserts that the ALJ's step-two finding is not supported by substantial evidence,

as "[n]early every medical doctor who has evaluated [Morrow's] claim ha[s] determined

that [she] has one or more impairments that [is] severe."  (Doc. 7 at 12.)  Morrow claims

the ALJ improperly substituted his own lay opinion for that of "all competent medical

opinions."  (*Id.* at 13.)  In response, the Commissioner argues that the ALJ's step-two

finding is supported by substantial evidence and complies with the applicable legal

standards.  Specifically, the Commissioner asserts that this finding is supported by the

treatment notes of Morrow's medical providers and by Morrow's ability to seek

employment and engage in "full-time volunteer activities" during the alleged disability

period.  (Doc. 8 at 16.)

The claimant bears the burden at step two of the sequential evaluation to establish

that his or her impairment is "severe," meaning it "significantly limit[s] [his or her]

physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a); *see* 20

C.F.R. § 404.1520(c).  Despite this strong language, the step-two severity assessment

"may do no more than screen out *de minimis* claims."  *Dixon v. Shalala*, 54 F.3d 1019,

1030 (2d Cir. 1995) (citing *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)).  To that end,

6

Social Security Ruling ("SSR") 85-28 provides: "A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the [claimant's] physical or mental ability(ies) to perform basic work activities."  1985 WL 56856, at *3 (1985).  The Ruling further states:  "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes *only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work*."  *Id.* (emphasis added) (citing 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), 416.921); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) ("The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out 'totally groundless claims.'") (quoting *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985)).

As explained below, the ALJ's finding that Morrow did not have a severe mental or physical impairment during the alleged disability period is not supported by substantial evidence.  Rather, the evidence demonstrates that Morrow's impairments caused more than a slight abnormality and had more than a minimal effect on her ability to perform basic work activities during the alleged disability period.

## I.      Mental Impairments

The ALJ's step-two error is particularly evident regarding Morrow's mental impairments.  Two agency consultants and two treating physicians opined that Morrow had severe mental impairments.  Specifically, in April 2013, agency consultant Joseph

Patalano, Ph.D., listed the following of Morrow's diagnoses as "[s]evere": affective

disorders, ADD/attention deficit hyperactivity disorder (ADHD), anxiety disorders, and

organic mental disorders.  (AR 50.)  Dr. Patalano also opined, after reviewing the record,

that Morrow had "[m]oderate" restrictions in activities of daily living; difficulties in

maintaining social functioning; and difficulties in maintaining concentration, persistence,

or pace (*id.*); and was capable of only "routine collaborating with supervisor[s] and

limited interaction with coworkers" (AR 53).  Agency consultant Roy Shapiro, Ph.D.,

made the same opinions in June 2013.  (AR 63–64, 67.)

In December 2012, treating neurologist Deborah Black, MD, found that Morrow's

CNS Vital Signs profile was "consistent with ADHD," and that "[i]t is likely that

associated situational and affective factors have an additional negative impact on

[Morrow's] ability to sustain attention and shift attention rapidly and flexibly in the face

of conflicting environmental demands."  (AR 308.)  Noting Morrow's "underlying

ADHD, sleep disturbance[,] and severe psychosocial stressors," Dr. Black opined that

Morrow "may qualify for [d]isability on the basis of her affective symptoms."  (*Id.*)

Finally, in July 2013, treating primary care physician Joseph Brock, MD–who

treated Morrow approximately every three months beginning in April 2012–opined that

Morrow's anxiety and depression were likely to interfere with her ability to work and

would reduce her productivity by "20% or more."  (AR 398.)  Dr. Brock further opined

that Morrow was incapable of even a low-stress job because of her difficulty in following

complex instructions, her inattention, and her anxiety.  (AR 399.)  Dr. Brock stated that

Morrow could do a low-stress job for 20 hours per week, but could not handle a full-time job, due to her anxiety, depression, and ADD.  (AR 402.)

Despite these opinions from two treating physicians and two consulting psychologists, the ALJ found that Morrow had no severe mental impairment.  In making this finding, the ALJ improperly "substitute[d] his own judgment" for that of competent medical professionals.  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.") (alterations in original) (internal quotation marks omitted).  Furthermore, the ALJ imprecisely stated, several times, that Morrow was able to "sustain a full[-]time work schedule volunteering for . . . the Heritage Foundation[,] . . . the board of directors at Washington County Mental Health[,] and the state Autism Board."  (AR 21; *see also* AR 20; Doc. 8 at 16, 21.)  In fact, the record does not indicate that Morrow engaged in full-time volunteer work for any significant amount of time during the relevant period.  At the administrative hearing, Morrow testified as follows: "I do volunteer work.  I'm on the board of Washington County Mental Health.  And I'[ve] just joined the Vermont [Autism] Task Force.  I'm trying to learn and keep my mind alive.  But I can't plan.  And I don't finish what I start."  (AR 36.)  This testimony does not imply that Morrow did volunteer work on a full-time basis during the alleged disability period, and the ALJ did not ask Morrow how frequently and for how long she did volunteer work during that period.

9

Regarding Morrow's work with the Heritage Foundation, the record demonstrates that she was fired from working there in October 2011, prior to the alleged disability onset date of November 1, 2011.  (AR 165, 375.)  With respect to her work with the Vermont Autism Task Force, a treatment note from January 2014 states that Morrow had "decided to volunteer for the Autism [Task Force]" and that she "went to a fundraiser in Barre," but it "took them [six months] to respond" and she "went to the wrong place." (AR 461.)  It is unclear what this statement means, but it cannot reasonably be interpreted to imply that Morrow was volunteering on a full-time basis.

The only evidence that could possibly support a claim that Morrow did full-time work during the alleged disability period, either remunerative or voluntary, is a treatment note dated January 27, 2012 which states: "She is working at a computer for over 12 hours a day, more than 5 days a week."  (AR 224.)  But it is not clear from this note (or any other document in the record) what "work" Morrow was doing at a computer at that time, or for how long.  Other records indicate that she may have been helping to raise holiday funds for a church (AR 369), or doing some freelance writing (AR 142, 163).  In either instance, the record does not support the ALJ's repeated finding that Morrow "sustain[ed] a full[-]time work schedule volunteering" during the alleged disability period.  (AR 21.)  Rather, the record indicates that Morrow did not work full time during that period and experienced difficulties working before then, mostly due to her mental impairments including depression, anxiety, and ADD/ADHD.  For example, Morrow's March 2013 Function Report states that she often did not get dressed or wear clean clothing and did not take care of her personal hygiene for days at a time because she

10

"mentally d[id]n't feel like she need[ed] to."  (AR 174.)  And Morrow testified at the

September 2014 hearing that she was sleeping for 12–14 hours each day.  (AR 35.)

For these reasons, the ALJ erred in finding that Morrow did not have a severe

mental impairment or combination of impairments during the alleged disability period.

## II.    Physical Impairments

The ALJ also erred in finding that Morrow had no severe physical impairment or

combination of impairments during the relevant period.  Again, multiple medical sources

opined that Morrow's physical impairments limited her ability to do work activities.

Regarding the agency consultant opinions, although Dr. Patalano and Dr. Francis Cook

opined that Morrow had no severe physical impairments (AR 49, 50), Dr. Shapiro opined

that Morrow's "spine disorders" were "[s]evere" (AR 63), and Dr. Geoffrey Knisely

found that Morrow suffered from "episodic" back pain that would limit her ability to lift

and carry heavy objects (AR 65).  The record contains objective medical evidence to

support these opinions.  (*See, e.g.*, AR 263 ("[d]egenerative disc disease and facet

arthropathy"), 290 ("[d]ecreased functional mobility, decreased hip strength[,] and low

back pain," "Decreased endurance.  Decreased strength.  Difficulty bending.  Difficulty

completing job tasks.  Difficulty lifting.  Difficulty with prolonged standing."), AR 342

("arthritis of lower back . . . explains persistent low back pain").)  For example, a

September 2012 treatment note from Dr. Brock states: "[Morrow] presents with signs and

symptoms consist[e]nt with disc degeneration as evidenced by increased pain with gait

and functional mobility tasks. . . .  She also presents with left [lower extremity] decreased

strength and decreased patellar reflexes."  (AR 290.)

In addition to the agency consultant opinions and supporting medical evidence, treating physician Dr. Brock opined in a July 2013 RFC Questionnaire[1] that Morrow could lift and carry up to 20 pounds occasionally and less than 10 pounds frequently (AR 400); could only occasionally stoop, crouch/squat, climb stairs, and balance; and could "[n]ever to [r]arely" climb ladders (AR 401).  In September 2014, Dr. Brock completed another Questionnaire, after reviewing the results of a Functional Capacity Evaluation (FCE) performed on Morrow in December 2013.  (AR 491; *see* AR 424–31.)  Dr. Brock agreed with the FCE's conclusion that Morrow could tolerate only sedentary work due to her chronic low back pain, deconditioning, and lumbar degenerative disc disease, which he found was reflected in August 2012 x-ray results.  (AR 491.)  More specifically, Dr. Brock concurred with the FCE's finding that Morrow could lift only10 pounds occasionally.  (*Id.*)  Dr. Brock stated that Morrow had had these limitations for three years.  (*Id.*)

The ALJ gave "minimal weight" and "no probative value" to these opinions of Dr. Brock[2] because: (a) "the doctor merely completed a checklist form," "circl[ing] the most limiting choices on th[e] form"; (b) "the doctor's opinion is inconsistent with his own treatment notes"; and (c) "the . . . opinion is without substantial support from the other evidence of record."  (AR 19.)  Substantial evidence–including Dr. Brock's own

---

[1]  For the most part, the limitations described in this Questionnaire are a result of Morrow's mental impairments including depression and anxiety (*see* AR 397–99), but presumably the lifting/carrying, stooping, climbing, and other similar limitations (*see* AR 400–01) are mostly a result of Morrow's physical impairments including her back pain.

[2]  Later in the decision, the ALJ states that he gave "no probative value" to Dr. Brock's opinion regarding Morrow's mental functioning.  (AR 22.)

12

treatment notes and Questionnaire responses–does not support the ALJ's assessment of Dr. Brock's opinions.  (*See, e.g.*, AR 263, 290, 341–42, 397–402, 424–31, 491.)  Even if substantial evidence did support that assessment, the ALJ still erred in finding that none of Morrow's physical impairments was severe at step two, given that several medical sources, treating and non-treating, opined that Morrow's back pain had more than a minimal effect on her ability to perform basic work activities during the alleged disability period.

## Conclusion

The Second Circuit recently reiterated that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing *Dixon*, 54 F.3d at 1030).  This is not one of those "very weakest" cases; rather, there is substantial evidence demonstrating that Morrow's mental and physical impairments had more than a minimal effect on her ability to do basic work activities during the alleged disability period, and thus were "severe."  The Court cannot find the ALJ's step-two error harmless because the ALJ concluded his analysis at that step without proceeding to the remaining steps of the sequential evaluation, and thus failed to account for any of Morrow's impairments on their own or in combination in determining a RFC for Morrow.  *See, e.g.*, *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012).  Furthermore, the VE testified that if the mental limitations identified by the agency consultants are accurate, Morrow could not return to her past relevant work (AR 42); and

given Morrow's age, she would likely be deemed disabled under the Medical-Vocational

Guidelines if she were no longer capable of skilled or semiskilled work.

Accordingly, the Court GRANTS Morrow's motion (Doc. 7), DENIES the

Commissioner's motion (Doc. 8), and REMANDS for further proceedings and a new

decision in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 30th day of January, 2017.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge